# United States Court of Appeals
## For the First Circuit

---

No. 06-2680

MICHAEL GAGLIARDI,

Plaintiff, Appellant,

v.

MICHAEL J. SULLIVAN and the CITY OF LAWRENCE,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lynch, Circuit Judge.

---

Walter H. Underhill, on brief for appellant.

---

January 18, 2008

---

**TORRUELLA**, **Circuit Judge**.  Michael Gagliardi lost his position on the Merrimack Valley Workforce Investment Board ("Board") in Lawrence, Massachusetts, when the Board was dissolved for failure to achieve the required state certification.  He brought suit under 42 U.S.C. § 1983,[1] claiming that Michael Sullivan, Lawrence's mayor ("Mayor Sullivan"), along with the City of Lawrence itself ("City") and three state officials, were responsible for the Board's dissolution and his consequent dismissal, and that such conduct amounted to a violation of his First and Fourteenth Amendment rights.  The three state officials moved to dismiss Gagliardi's claim for failure to state a claim on which relief could be granted, see Fed. R. Civ. P. 12(b)(6), and the district court granted the motion with respect to all five defendants.  Gagliardi appeals this dismissal, but only with respect to Mayor Sullivan and the City.  After careful consideration, we affirm.

## I.  Background

### A.  Facts

Since the district court dismissed Gagliardi's complaint pursuant to Rule 12(b)(6), we assume the truth of the well-pleaded facts therein.  Martínez-Rivera v. Sánchez-Ramos, 498 F.3d 3, 5 (1st Cir. 2007); see also Ruiz v. Bally Total Fitness Holding

---

[1]  Gagliardi also made a state law claim that is not at issue in this appeal.

Corp., 496 F.3d 1, 5 (1st Cir. 2007). We draw our recounting of the relevant facts from the complaint and the documents annexed to it or fairly incorporated within it. See Wetmore v. MacDonald, Page, Schatz, Fletcher & Co., LLC, 476 F.3d 1, 2 (1st Cir. 2007).

The Board was a nonprofit corporation established pursuant to the Workforce Investment Act §§ 101-195, 29 U.S.C. §§ 2801-2945 (2007). Its duties included determining how to allocate federal, state, and local funds to occupational training in Lawrence and surrounding communities, establishing workforce development policy, and assisting in overseeing two "one-stop career centers" in the Lawrence area. During the relevant period, Mayor Sullivan served as the Board's Chief Elected Official. Among Mayor Sullivan's duties as Chief Elected Official was to appoint members to the Board. See id. § 2832(c)(1)(A).

The Workforce Investment Act requires that local boards be certified by the governor of the state every two years, based on certain specified criteria. See id. § 2832(c)(2). During the relevant period, then-Governor Mitt Romney ("Governor Romney") delegated responsibility for certifying workforce investment boards, along with receiving and evaluating certification-related documents, to the Massachusetts Division of Career Services ("DCS"), headed by Susan V. Lawler ("Commissioner Lawler"). DCS was a subunit of the Massachusetts Department of Workforce Development ("DWD"), headed by Ranch Kimball ("Secretary

-3-

Kimball").[2] DCS conditionally certified Gagliardi's Board sometime in 2004 pending the fulfillment of certain criteria.

At a certain point, the Board became concerned with the way Mayor Sullivan was using grant money subject to the Board's jurisdiction. It set up a task force, which in the summer of 2005[3] uncovered a covert fund of some $1.1 million which Mayor Sullivan was using for his own purposes. The Board produced a report exposing the existence of the fund and criticizing Mayor Sullivan's use of Board funds in general.

In the meantime, the Board was having problems obtaining its biennial certification from DCS. It had submitted a certification package sometime in 2004, but DCS stated that it would not certify the Board until Mayor Sullivan had completed certain tasks,[4] which he failed to do throughout 2005. DCS cited

---

[2] Governor Romney, Secretary Kimball, and Commissioner Lawler were originally named as defendants in this lawsuit along with Mayor Sullivan and the City.

[3] Gagliardi omits to state in his complaint or brief the date on which the report was issued. We glean the fact that it was issued sometime in the summer of 2005 from the September 13, 2005 newspaper article on this incident, which Gagliardi attached to his complaint.

[4] A city department known as the Division of Training and Development ("DTD") assisted in the operation of the two Lawrence-area career centers, and was originally also the employer of record of the Board members, "Title I administrator," and fiscal agent. The Board complained to DCS that state policy forbade the DTD from performing these latter functions, and it was agreed that they would be transferred to another entity. As Chief Elected Official, this responsibility fell to Mayor Sullivan.

this failure as a reason for its inability to grant full certification to the Board.

In September 2005, the City acknowledged that the Board had compiled all the certification documents "within its purview," but that "there [were] a few items that remain[ed] which [were] dependent on City of Lawrence Decisions." Soon thereafter, Gagliardi and the Board's chair disclosed Mayor Sullivan's inaction to a local newspaper, which published an article on the matter on September 13, 2005. According to Gagliardi's complaint, this publicity infuriated Mayor Sullivan's brother, Kevin Sullivan, who purportedly threatened to use his "influence with the state" to cause the Board to be decertified.

On October 21, 2005, Commissioner Lawler informed the Board that, due to its continued conditionally certified status, it was no longer authorized to undertake workforce development business, and would be confined to whatever business was necessary to rectify outstanding certification issues. Mayor Sullivan put attorney William DiAdamo in charge of compiling and presenting a final certification package to DCS. Apparently as part of this package, DiAdamo drafted a new set of Board bylaws which, inter alia, would give Mayor Sullivan the power to dismiss board members at will. The Board chair refused to go along with the termination provision, claiming it was inconsistent with the Workforce Investment Act. Gagliardi claims that, in response to this

-5-

refusal, DiAdamo's father "said he had powerful allies in . . . Ranch Kimball's office, who would decertify the [Board] on a moment's notice."

According to the complaint, at some point in November 2005, Mayor Sullivan met "at a secret location with four DCS and/or DWD officials." At the end of the meeting, "the Mayor announced that he had disbanded the Board." Mayor Sullivan and DCS took the position that the Board had to be dissolved because of its failure to submit a complete certification package, and Mayor Sullivan expressed the view that conflicts among the Board's members had prevented it from functioning effectively.

B. **Procedure in the District Court**

On March 28, 2006, Gagliardi filed suit in the district court under 42 U.S.C. § 1983, claiming that Mayor Sullivan, the City, Commissioner Lawler, Secretary Kimball, and Governor Romney had infringed his constitutional rights to free speech and procedural due process. He averred, inter alia, that "[t]he Board members were fired for performing an oversight function required by federal law," and that Mayor Sullivan and DCS conspired to destroy the Board by interfering with the certification process. Gagliardi sought, inter alia, a declaration that the termination of the Board was unlawful, an injunction reinstating the Board and requiring Mayor Sullivan to assist it in achieving certification, and compensatory and punitive damages.

Governor Romney, Secretary Kimball, and Commissioner Lawler moved jointly under Rule 12(b)(6) to dismiss Gagliardi's complaint for failure to state a claim on which relief could be granted. Neither Mayor Sullivan nor the City joined the motion. At the hearing on the motion, counsel for Governor Romney, Secretary Kimball, and Commissioner Lawler presented arguments, as did counsel for Gagliardi; counsel for Mayor Sullivan and the City was in attendance, but made no submissions and acknowledged that he was "not obviously participating substantively in the discussions . . . ." The district court dismissed all of Gagliardi's federal claims -- not only against Governor Romney, Secretary Kimball, and Commissioner Lawler, but also against Mayor Sullivan and the City -- and remanded the state claims to Massachusetts court.[5]

### C. Procedure on Appeal

Gagliardi appealed the dismissal of his complaint, only with respect to Mayor Sullivan, the City, and Commissioner Lawler. Commissioner Lawler filed a response brief; Mayor Sullivan and the City did not, and did not appear for oral argument. Before oral argument, Commissioner Lawler and Gagliardi moved pursuant to

---

[5] By agreement among the parties, all claims against Governor Romney were dismissed, as were all claims against all defendants in their official capacities for compensatory and punitive damages.

Federal Rule of Appellate Procedure 42(b) to dismiss the appeal with respect to her.  We granted the motion.[6]

## II.  Discussion

### A.  Standard of Review

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the factual allegations in a complaint must "possess enough heft" to set forth "a plausible entitlement to relief."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1966-67 (2007).  Dismissal for failure to state a claim is appropriate if the complaint fails to set forth "'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'"  Centro Médico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (quoting Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997)).

We review a district court's order granting a motion to dismiss de novo.  Id. at 5.  Although we take the well-pleaded

---

[6] After Commissioner Lawler was dismissed, Mayor Sullivan and the City filed a letter stating that they "formally adopt" the arguments made in Commissioner Lawler's brief "as their own."  An appellee cannot, however, simply adopt the arguments of another appellee without making some effort at explaining how those arguments apply to its case, particularly in the present circumstances where Commissioner Lawler's position and alleged conduct differ in several important respects from those of Mayor Sullivan.  See United States v. Casas, 425 F.3d 23, 30 n.2 (2005).  We decline the invitation to scour Commissioner Lawler's brief in search of arguments that might be availing to Mayor Sullivan and the City.  See id., 425 F.3d at 30 n.2.

facts in the light most favorable to the plaintiff and indulge him all reasonable inferences, Berner, 129 F.3d at 23, we need not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation," or "subjective characterizations, optimistic predictions, or problematic suppositions." Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir. 1993) (citation and internal quotation marks omitted); accord Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61 (1st Cir. 2004). We may augment the facts in the complaint by reference to "(i) documents annexed to [the complaint] or fairly incorporated into it, and (ii) matters susceptible to judicial notice." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).[7]

---

[7] Gagliardi may have been entitled to different treatment because, while he was clearly on notice that the district court might grant the Rule 12(b)(6) motion with respect to its proponents Romney, Kimball, and Lawler, he may not have been on notice that the district court would also dismiss the complaint with respect to Sullivan and the City. As discussed above, Sullivan and the City did not join the motion or make arguments at the motion hearing. See Chute v. Walker, 281 F.3d 314, 319 (1st Cir. 2002) (sua sponte dismissal under Rule 12(b)(6) upheld only if "[i]f it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile") (quoting González-González v. United States, 257 F.3d 31, 37 (1st Cir. 2001)). Nevertheless, Gagliardi did not object at the hearing and has not raised this issue on appeal, so we apply the normal standard. See Zannino, 895 F.2d at 17.

## B.  42 U.S.C. § 1983

Section 1983 is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights, such as the First Amendment's right to free speech or the Fourteenth Amendment's right to procedural due process. See Centro Médico del Turabo, 406 F.3d at 6 n.2.  A claim under § 1983 has two "essential elements":  the defendant must have acted under color of state law, and his or her conduct must have deprived the plaintiff of rights secured by the Constitution or by federal law. Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997).  The second element requires the plaintiff to show "that the [defendant's] conduct was the cause in fact of the alleged deprivation."  Id.

### 1.  Free Speech Claim

Claims of retaliatory adverse employment action for the exercise of First Amendment rights are cognizable under § 1983. See Powell v. Alexander, 391 F.3d 1, 16 (1st Cir. 2004).  To make out such a claim in the present circumstances, the well-pleaded facts in the complaint, considered together with the documents annexed to it or fairly incorporated within it, must establish that Gagliardi's speech was protected under the First Amendment so as to shield him from adverse employment action in retaliation for such

speech,[8] and that he suffered adverse employment action caused by Mayor Sullivan and the City.  In addition, there is a third question concerned with causation, "with whether the plaintiff can show that the protected expression was a substantial or motivating factor in the adverse employment decision." Curran v. Cousins, No. 07-1686, 2007 WL 4247791, at *6 (1st Cir. Dec. 5, 2007).[9]  The employer must, of course, "have the opportunity to prove that it would have made the same decision regardless of the protected expression."  Id. (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

Read in the light most favorable to Gagliardi and drawing all reasonable inferences in his favor, the complaint cites two concrete instances of speech which allegedly provoked the retaliatory dissolution of the Board.  The first was in the summer

---

[8]  Whether a public employee is shielded from adverse employment action for engaging in speech is governed by a two-step inquiry that asks "'whether the employee spoke as a citizen on a matter of public concern'" and, if so, "'whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.'"  Curran v. Cousins, No. 07-1686, 2007 WL 4247791, at *6 (1st Cir. Dec. 5, 2007) (quoting Garcetti v. Ceballos, 126 S. Ct. 1951, 1958 (2006)). These are issues of law for the court.  As discussed below, the third issue is causation.

[9]  As a general rule, we abstain at this stage of the proceedings from deciding whether this element has been established, since it "'normally presents a factfinding responsibility for the jury.'" Garnier v. Rodríguez, 506 F.3d 22, 27 (1st Cir. 2007) (quoting Nethersole v. Bulger, 287 F.3d 15, 18-19 (1st Cir. 2002)).  In this case we are presented with a rare exception to the general rule, as the complaint is so patently deficient.

of 2005, when the Board issued its report exposing the existence of Mayor Sullivan's $1.1 million covert fund. The second was the September 13, 2005 newspaper article in which Gagliardi and the chair of the Board exposed Mayor Sullivan's persistent failure to perform the tasks necessary for the Board to complete its certification package. Neither allegation is sufficient to state a claim on which relief can be granted.

First, it is evident that neither Mayor Sullivan nor anyone else whose conduct may be imputed to the City was directly responsible for decertifying, and thus dissolving, the Board. Despite the occasional asseveration that Mayor Sullivan himself "fired," "terminated," or "disbanded" the Board -- and thus "fired" or "terminated" its members -- it is clear that only the governor and those acting with authority delegated by him were empowered to certify or decertify workforce investment boards. See 29 U.S.C. § 2832(c). Nowhere does Gagliardi allege that Governor Romney delegated this authority to Mayor Sullivan or another Lawrence city official. He instead admits that Governor Romney delegated it to DCS, and that it was Commissioner Lawler as head of DCS who oversaw the certification process, including by corresponding with the Board on the steps still needed to achieve certification, and by ultimately deciding that the Board could transact no further workforce development business until it submitted a complete and satisfactory certification package. According to the complaint,

-12-

Mayor Sullivan did not announce the Board's dissolution until after he had met in secret with unnamed officials from DCS or from DWD, the state agency of which DCS formed part. We reject the complaint's intimation that Mayor Sullivan somehow twisted the arm of these officials, during this meeting or elsewhere, to persuade them to decertify the Board; this allegation is conclusory and is not substantiated by reasonable inference from the well-pleaded facts. See Dartmouth Review, 889 F.2d at 16.[10] The well-pleaded facts do not demonstrate that either Mayor Sullivan or any other Lawrence city official made or directly compelled the state officials to make the decision to decertify.

Second, Gagliardi's complaint, viewed in the light most favorable to him, can also be read as making an allegation of indirect causation between Mayor Sullivan and the decision to decertify. The Board was decertified for failing to submit a complete certification package. While the Board had, sometime in 2004, turned in all the required documentation it could to DCS, it fell to Mayor Sullivan as Chief Elected Official to undertake the remaining tasks necessary for certification. Gagliardi argues that

---

[10] We similarly give no credit to any notion that Kevin Sullivan, Mayor Sullivan's brother, carried out his threat to use his "influence with the state" to cause the Board to be decertified in retaliation for the newspaper article, or that DiAdamo's father carried out his threat to contact "powerful allies in . . . Ranch Kimball's office, who would decertify the [Board] on a moment's notice." In any event, the complaint does not allege that either man actually approached any state official to urge decertification.

Mayor Sullivan deliberately refrained from undertaking these tasks in retaliation for the critical report, the newspaper article, or both.

Yet even if Gagliardi could manage to prove at trial a causal nexus between Mayor Sullivan's deliberate inaction and the decision to decertify the Board -- including that DCS would have certified the Board but for Mayor Sullivan's inaction -- he has failed to demonstrate that either instance of speech was a substantial or motivating factor behind the inaction. The complaint avers that the certification package was ready, with the exception of the tasks required of Mayor Sullivan, sometime in 2004. According to the complaint, "[t]hroughout 2005, the Mayor, through his inaction, prevented the certification process from being completed." These facts plainly indicate that Mayor Sullivan's inaction began at least some months before the two instances of speech, which occurred respectively in the summer of 2005 and on September 13, 2005. The speech in question did not provoke Mayor Sullivan to abstain from undertaking his certification-related tasks; such abstention long predated the speech and continued up to the Board's November 2005 decertification. See Johnson v. Louisiana, 369 F.3d 826, 830 (5th Cir. 2004) ("[I]f the decision-maker who imposed the adverse employment action was not motivated by the speech, then the speech did not cause the adverse employment action."). Even if a causal

-14-

link could be demonstrated between Mayor Sullivan's inaction and the decision to decertify the Board, Gagliardi has failed to plead sufficient facts to show that his speech was a substantial or motivating factor behind Mayor Sullivan's inaction.

Accordingly, Gagliardi has failed to state a plausible entitlement to relief on the free speech claim: he has not alleged sufficient well-pleaded facts to demonstrate that Mayor Sullivan or the City directly caused the Board's decertification or that, if Mayor Sullivan indirectly caused the decertification through his inaction, that the speech in question was a substantial or motivating factor behind such inaction. No relief could therefore be granted on this claim if the case were to proceed to trial.

## 2. **Due Process Claim**

What we have said above allows us to dispose of Gagliardi's Fourteenth Amendment due process claim in short order. Invoking Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), Gagliardi argues that he had a property interest in his position on the Board, and that he was deprived of this interest without due process of law by not being told the reasons for the Board's dissolution and his consequent dismissal, or being given an opportunity to be heard. See Alvarado-Aguilera v. Negrón, No. 06-2467, 2007 WL 4247665, at *1 (1st Cir. Dec. 5, 2007) (plaintiff must "'exhibit a constitutionally protected interest in life, liberty, or property'" to state a valid claim for a violation of

-15-

Fourteenth Amendment due process (quoting <u>Centro Médico del Turabo</u>, 406 F.3d at 8)); <u>id.</u> ("Property interests are created and defined by 'existing rules or understandings that stem from an independent source such as state law.'") (quoting <u>Hatfield-Bermúdez</u> v. <u>Aldanondo-Rivera</u>, 496 F.3d 51, 59 (1st Cir. 2007)); <u>Loudermill</u>, 470 U.S. at 542 (notice and an opportunity to be heard are "essential principle[s] of due process").

This claim appears to be a relic from a time when the state officials ostensibly responsible for the decision to decertify the Board -- Governor Romney, Secretary Kimball (for DWD), and Commissioner Lawler (for DCS) -- were still defendants in this case. We need not reach the question of whether Massachusetts law gave Gagliardi a property interest in continued appointment to the Board because he cannot make out a due process claim even if he can show such an interest. This is so because neither Mayor Sullivan nor any other Lawrence official was responsible for the decision to decertify the Board, and they accordingly had no duty to provide Gagliardi with notice or an opportunity to be heard. If anyone owed Gagliardi such guarantees -- again, a question we do not reach -- it would have been Governor Romney, Secretary Kimball, Commissioner Lawler, or some other state official with the proper authorization; none of these persons is a party to the lawsuit. <u>Cf.</u> <u>Woods</u> v. <u>City of Michigan City, Ind.</u>, 940 F.2d 275, 279 (7th Cir. 1991) (defendants city and county not liable under § 1983

where official whose order arguably deprived plaintiff of constitutionally protected liberty interest without due process was a non-defendant state judge).  Thus, Gagliardi has again failed to state a plausible entitlement to relief.  The district court did not err in dismissing this claim under Rule 12(b)(6).

### III.  Conclusion

For the foregoing reasons, we affirm the dismissal of Gagliardi's complaint.  No costs are awarded.

**Affirmed**.