Saris, U.S.D.J.
*168 12 The MBTA defendants have objected to the Report and Recommendation, which recommended that the Court deny the motion to dismiss the claim of employment discrimination under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. See Docket No. 35. The MBTA argues that employment discrimination claims must be brought under Title I. The First Circuit has not yet ruled on the subject. See Currie v. Group Ins. Comm'n , 290 F.3d 1, 6, 9 (1st Cir. 2002). However, most circuits have held that employment claims against public entities must be brought under Title I. See Taylor v. City of Shreveport , 798 F.3d 276, 282 (5th Cir. 2015) ("Unlike Title I of the ADA, Title II does not create a cause of action for employment discrimination."); Reyazuddin v. Montgomery Cnty., Md. , 789 F.3d 407, 421 (4th Cir. 2015) ("Based on the text and structure of Title II and the ADA, we agree with the majority of circuits to have considered the question that Title II unambiguously does not provide a vehicle for public employment discrimination claims."); Brumfield v. City of Chicago , 735 F.3d 619, 628 (7th Cir. 2013) ("Title II is clearly inapplicable to employment discrimination because Title I specifically, comprehensively, and exclusively addresses disability discrimination in employment."); Mary Jo C. v. N.Y. State & Local Ret. Syst. , 707 F.3d 144, 171 (2d Cir. 2013) (holding that the ADA "unambiguously limits employment discrimination claims to Title I"); Elwell v. Oklahoma ex rel. Bd. of Regents of the Univ. of Okla. , 693 F.3d 1303, 1309 (10th Cir. 2012) ("[E]ach title does important and independent work -- work that would be diminished, duplicated, even rendered superfluous were we to read Title II as covering employment discrimination."); Zimmerman v. Or. Dep't of Justice , 170 F.3d 1169, 1178 (9th Cir. 1999) ("[W]hen viewed as a whole, the text, context and structure of the ADA show unambiguously that Congress did not intend for Title II to apply to employment."); see also Menkowitz v. Pottstown Mem'l Med. Ctr. , 154 F.3d 113, 118-19 (3d Cir. 1998) (discussing Title III and holding that "it is evident that Congress sought to regulate disability discrimination in the area of employment exclusively through Title I"); Parker v. Metro. Life Ins. Co. , 121 F.3d 1006, 1014-15 (6th Cir. 1997) (discussing Title III and holding that "the statutory framework of the ADA expressly limits discrimination in employment practices to Title I of the ADA"). But see Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist. , 133 F.3d 816, 822 (11th Cir. 1998) ("[E]mployment coverage is clear from the language and structure of Title II."). I agree with the majority of the circuits and dismiss the claim of employment discrimination brought under Title II.
For the reasons stated in the Report and Recommendation, I dismiss the other claims as well. The action is DISMISSED.
REPORT AND RECOMMENDATION ON DEFENDANTS MBTA, SCOTT C. ANDREWS, AND NORMAN W. MICHAUD'S MOTION TO DISMISS (# 10).
M. Page Kelley, United States Magistrate Judge
I. Introduction.
This is a dispute about an allegedly unlawful termination based on disability.
*169 Plaintiff Rosalind Logie is a former employee of the Massachusetts Bay Transportation Authority (MBTA). Plaintiff contends that she was wrongfully terminated because of her diabetes in violation of various federal and state laws. As explained below, the only viable claim plaintiff states is for alleged violation of Title II of the Americans with Disabilities Act (ADA) by the MBTA. The court therefore RECOMMENDS that defendants' motion to dismiss be GRANTED in part and DENIED in part.
II. Facts.[1]
Plaintiff was hired by the MBTA as a part-time Red Line train operator on December 7, 2009. (# 1 at 2.)[2] Defendant Norman W. Michaud was the Superintendent of Red Line Transportation for the MBTA. Id. at 2 ¶4. Defendant Scott C. Andrews was the Deputy Director of Red Line Operations for the MBTA. Id. at 2 ¶5. Beginning in 2012, plaintiff took a series of medical leaves because of "brittle" or not-well-controlled diabetes, and did not return to driving the train.
In May 2012, plaintiff took medical leave because of her diabetes. Id. at 3 ¶3. On June 20, 2012, plaintiff's primary care physician, Dr. Joseph Rencic, MD, sent the MBTA a letter describing plaintiff's diabetes and requesting that she not drive the train "for the next month or so, until it is better controlled." Id. at 3 ¶4, Ex. B. Plaintiff requested additional leave on June 26, 2012, and requested to be assigned to a job that did not involve "operation of a train." Id. at 3 ¶5, Ex. C. On August 1, 2012 plaintiff requested to be "returned" to the Customer Service Agent department. Plaintiff noted she had been requalified for "Light Duty" by the MBTA Medical Department on July 18, 2012. Id. at 3 ¶6, Ex. D.
The MBTA "temporarily reassigned" plaintiff to a CSA position, as a "work place accommodation under the Americans with Disabilities Act (ADA)," from January 1, 2013 to March 1, 2013, with an extension until April 15, 2013 based on "medical documentation ... that continues your disqualification from your permanent position as a Part-Time Motorperson." Id. at 3-4 ¶¶6-7, Exs. E, F. Plaintiff was "reminded that the purpose of the ADA is to provide, without undue hardship, reasonable accommodations that will assist employees in performing the essential functions of the positions for which they were hired, and, that placement in the alternative positions is strictly temporary."Id. Ex. F. On July 18, 2013, plaintiff was granted an extension of her light duty position until July 31, 2013. Id. Ex. I. The letter stated, "As you were made aware, this accommodation was temporary and would not be permanent or extended indefinitely. Please note that this is the final extension that will be granted to you." Id.
On August 6, 2013, Dr. Rencic provided a letter to the MBTA stating that plaintiff could not safely operate a train but could perform the functions of a CSA safely. Id. Ex. L. Plaintiff was apparently granted *170 medical leave on August 5, 2013. See id. Ex. O (reflecting 105 days of ADA leave beginning August 5, 2013, and sick leave beginning January 7, 2014).
In October 2013, Michaud contacted plaintiff on behalf of the MBTA to note that she had "been absent from work for an extended period" and had not been properly updating the MBTA as to her whereabouts and condition. Id. ¶ 7, Ex. G. Plaintiff was asked to report for an interview on November 7, 2013 and warned that a failure to report or notify the MBTA would "result in a thirty (30) day suspension with recommendation for discharge." On November 6, 2013, Dr. Rencic provided a letter stating plaintiff could perform the tasks of a CSA but not those of a driver due to diabetes and recent cataract surgery. Id. at 4 ¶8, Ex. H. In an undated letter, plaintiff requested an "ADA [extension] after the 12th of this [month] they are telling me they are going to lay me off. I'm still working with [union representative] Larry Kelly." Id. at 4 ¶8, Ex. J. On November 18, 2013, the MBTA extended plaintiff's "continuous leave accommodation under the [...] ADA" to January 6, 2014. Id. at 4 ¶8, Ex. K.
Once leave expired January 6, 2014, plaintiff apparently did not return to work. Michaud, on behalf of the MBTA, contacted plaintiff on January 27, 2014. Id. Ex. M. Michaud noted that plaintiff had "been absent from work for an extended period" and was ordered to, again, appear for an interview on February 11, 2014, or face a thirty-day suspension with recommendation for discharge. Id. On Feb. 11, 2014, Dr. Rencic provided a letter stating that it was medically necessary for plaintiff to perform only a CSA role rather than driving a train. Id. Ex. N. Dr. Rencic stated further that "with continued care [...] we think this is a temporary situation and these issues will resolve." Id. On February 12, 2014, plaintiff a received discipline slip and was interviewed for possible termination. Id. at 5 ¶10, Ex. O. Plaintiff stated "[s]he would like light duty under the recommendation of her doctor." Id. Plaintiff was suspended for thirty days after this hearing and recommended for discharge. Id. at 5 ¶10, Ex. O.
Dr. Rencic provided another letter on February 18, 2014, stating plaintiff could perform the position of CSA safely, and "will be able to recover to be fully functioning and become a motor person within 6-8 months. Id. at 5 ¶10, Ex. F. Dr. Rencic sent a substantially similar letter February 24, 2014. Id. at 5, ¶10, Ex. Q. On March 11, 2014, the MBTA extended plaintiff's medical leave to May 6, 2014. Id. at 5 ¶8, Ex. R.
On June 24, 2014, Dr. Rencic wrote that plaintiff would not be able to work as train operator for at least three additional months. Id. at 5 ¶11, Ex. S.
On July 1, 2014, plaintiff filed a grievance with her union. Id. at 5 ¶12, Ex. T. The MBTA denied the grievance based on plaintiff's absence from August 5, 2013 to June 25, 2014, and her failure "to provide the Authority with an expected return to work date during her absence."Id. at 5 ¶12, Ex. U.
The MBTA sent a letter to plaintiff on July 23, 2014, stating plaintiff had not contacted the MBTA regarding her leave but that the MBTA had received information from her doctor. Id. at 13, Ex. V. The letter noted that the MBTA had provided plaintiff with accommodation since she was medically disqualified as a train operator in June 2012, including "temporary assignment to a [CSA] position and, when that position ended, an extended leave of absence." Id. Ex. V at 1. The letter stated, further, that plaintiff was still unable to perform the motorperson position and that there was "no clear time frame for resuming [her] job duties. At this point, you have *171 been unable to perform your regular job duties for over two years and it is still unclear when you will be able to perform your job duties." Id. Ex. V at 1. Plaintiff was invited to meet with the MBTA in person or by telephone before the MBTA made a final decision. Id. Ex. V at 2. There is no record that plaintiff responded.
The MBTA discharged plaintiff on September 29, 2014. Id. at 6 ¶14, Ex. Y.
On December 10, 2014, Dr. Rencic again contacted the MBTA stating that plaintiff could return to work as a CSA but not as a train conductor and "[i]f this is not a possibility, then she will be unable to come back to work." Id. Ex. W. A grievance was apparently presented by plaintiff's union on her behalf on December 17, 2014, and was denied on January 14, 2015. Id. Ex. Y. The denial states that plaintiff had not "demonstrate[d] an ability to return to work as a Motorperson" and was found to have violated MBTA rules, including the attendance policy. Id.
On March 23, 2017, plaintiff filed a charge with the EEOC, and she filed a charge with the Massachusetts Commission Against Discrimination (MCAD) on April 5, 2017. (# 10-1 Ex. A.) The EEOC issued a right to sue letter to plaintiff on April 25, 2017. Id. Ex. B.
Plaintiff filed the present action, pro se, on May 22, 2017. (# 1.)
Plaintiff was initially given 90 days from August 14, 2017 to serve defendants, and was permitted to "have service completed by the United States Marshals Service (USMS)." (# 7.) Summons were issued the same day. (# 8.) Plaintiff claims to have provided the USMS with papers for service by giving the papers to her son, in federal custody, to pass on to the USMS. (# 29 at 11.) Plaintiff claims her son's account was not charged and the paperwork was not mailed until October 16, 2017. (# 29 at 6, 11; # 29-2 Exs. 1, 2.) The USMS received the paperwork for service on Michaud on or before October 23, 2018, and for the remaining defendants on or before November 7, 2017. See ## 9, 14-16, 18-19. The MBTA, Andrews, and Michaud moved to dismiss the claims against them on November 24, 2017, based on insufficient service and plaintiff's alleged failure to state a claim for which relief may be granted. (# 10.) Michaud was served on November 2, 2017. (# 9.) The MBTA was served on November 20, 2017. (# 18.) Scott C. Andrews has not been served to date. See # 15 (reflecting return of service unexecuted).
III. Legal Standard.
A. Requirement to Make Timely Service.
Under the Federal Rules,
If a defendant is not served within 90 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.
Fed. R. Civ. P. 4(m). Local Rule 4.1(b) states, in part:
(a) Time Limit. Any summons not returned with proof that it was served within 90 days of the filing of the complaint is deemed to be unserved for the purpose of Fed. R. Civ. P. 4(m).
(b) Showing of Good Cause for Failure to Comply. Counsel and parties appearing pro se who seek to show good cause for the failure to make service within the 90-day period prescribed by Fed. R. Civ. P. 4(m) shall do so by filing a motion for enlargement of time under Fed. R. Civ. P. 6(b), together with a supporting affidavit. If on the 14th day following the expiration of the 90-day period good cause has not been shown as provided *172 herein, the clerk shall forthwith automatically enter an order of dismissal for failure to effect service of process, without awaiting any further order of the court. The clerk shall furnish a copy of this local rule to counsel or pro se plaintiffs, together with the summons. Such notice shall constitute the notice required by Fed. R. Civ. P. 4(m). No further notice need be given by the court....
B. Failure to State a Claim, Rule 12(b)(6).
Under Rule 12(b)(6), plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." See Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). As the First Circuit has stated, "dismissal for failure to state a claim is appropriate if the complaint fails to set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.' " Gagliardi v. Sullivan , 513 F.3d 301, 305 (1st Cir. 2008) (citing Centro Médico del Turabo, Inc. v. Feliciano de Melecio , 406 F.3d 1, 6 (1st Cir. 2005) (quoting Berner v. Delahanty , 129 F.3d 20, 25 (1st Cir. 1997) ). Courts employ a two-step process to evaluate a motion to dismiss, "[a]t the first step, we distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).... At step two, we must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable." Saldivar v. Racine , 818 F.3d 14, 18 (1st Cir. 2016) (internal quotations and citations omitted) (affirming motion to dismiss).
As a pro se litigant, plaintiff is entitled to have her complaint construed liberally. Wedeen v. Green River Power Sports , 14 F. App'x 6, 6-7 (1st Cir. 2001) (quoting Ahmed v. Rosenblatt , 118 F.3d 886, 889 (1st Cir.1997) ). Pro se plaintiffs are not entirely relieved of the pleading requirements:
[A] plaintiff, even one proceeding pro se, may not rely on "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, [and] outright vituperation." Berner v. Delahanty , 129 F.3d 20, (1st Cir. 1997) (internal citations omitted). In addition, the "duty to be less stringent with pro se complaints does not require [the court] to conjure up implied allegations." McDonald v. Hall , 610 F.2d 16, 19 (1st Cir. 1979) (internal citations omitted).
Baxter v. Conte , 190 F.Supp.2d 123, 126 (D. Mass. 2001) (allowing motions to dismiss).
IV. Discussion.
Defendants MBTA, Michaud, and Andrews (the MBTA Defendants) move to dismiss plaintiff's claim both because service was allegedly untimely, or not made at all, and because the complaint fails to state a claim for which relief may be granted. (# 10.) For the reasons below, the court finds that plaintiff served Michaud on time and her late service with respect to the MBTA was excusable. Plaintiff's failure to serve Andrews, on the other hand, is fatal to her claims against him. Moreover, plaintiff fails to state a claim for employment discrimination under the various laws cited except for her Title II ADA claim against the MBTA. This claim alone survives.
*173 A. Plaintiff Served the MBTA and Michaud.
Plaintiff has successfully served the MBTA and Norman Michaud, as explained below. However, plaintiff has not served defendant Scott C. Andrews; the claims against him should be dismissed on that basis.
Plaintiff filed the present action, pro se, on May 22, 2017. (# 1.) Plaintiff was initially given 90 days from August 14, 2017, to serve defendants, and was permitted to "have service completed by the United States Marshals Service (USMS)." (# 7.) Plaintiff claims to have provided the USMS with papers for service by giving the papers to her son, residing in federal custody, to pass on to the USMS. (# 29 at 6, 11.) Michaud was served on November 2, 2017. (# 9.) The USMS possessed the remainder of the summons no later than November 7, 2017. See ## 14-16, 18-19. The MBTA was served on November 20, 2017. (# 18.) Scott C. Andrews has not been served to date. See # 15 (reflecting return of service unexecuted). The MBTA and Andrews moved to dismiss the claims against them on November 24, 2017, based on insufficient service, contending that the 90-day deadline for service was November 12, 2017. (# 10 at 13-14.)
Plaintiff's late service to the MBTA is excused for good cause. Plaintiff provided the summons to the USMS, which was apparently unable to make service on time. In the First Circuit, this is sufficient to show good cause for delay. See Laurence v. Wall , 551 F.3d 92, 94 (1st Cir. 2008) ; Boyd v. Rue , No. C.A. 09-10588-MLW, 2010 WL 3824106, at *1 (D. Mass. Sept. 27, 2010) ("So long as such a plaintiff provides the information necessary to identify the defendant, courts have uniformly held that the Marshals' failure to effect service automatically constitutes good cause within the meaning of Rule 4(m).") (internal quotations and citation omitted). Moreover, there is no evidence that plaintiff's failure to make timely service was intentional or in bad faith. See Cichocki v. Massachusetts Bay Cmty. Coll. , 174 F.Supp.3d 572, 578 (D. Mass. 2016) (extending time for service where pro se plaintiffs attempted service by Federal Express). The MBTA and Michaud were not prejudiced by the delay of a few days, having served their motion to dismiss before they were served. See id. In sum, "even if defendants received service late, plaintiff made a good faith effort to serve them within the time limit. [She] has therefore shown good cause for the slight delay." Holmes v. Meleady , 738 F.Supp.2d 196, 201 (D. Mass. 2010) (citations omitted).
B. Plaintiff States a Claim for Which Relief May be Granted.
As a pro se plaintiff apparently relying on a non-lawyer for assistance,[3] plaintiff's complaint and opposition to the motion to dismiss are, at times, difficult to parse. Nonetheless, the court will interpret plaintiff's claims as broadly as possible, without conjuring up implied allegations.
1. Plaintiff's Breach of Contract and Wrongful Discharge Claims Fail.[4]
Plaintiff's complaint contains a *174 claim for "Breach of Contract and Wrongful Discharge from the MBTA (Ground I)." (# 1 at 6.) These claims sound in state law. They would be pled in the alternative, as wrongful discharge claims apply to employees at will. See Melley v. Gillette Corp. , 19 Mass.App.Ct. 511, 475 N.E.2d 1227, 1228 (1985), aff'd , 397 Mass. 1004, 491 N.E.2d 252 (1986) (describing the rationale for a common law claim for termination in violation of public policy to protect "at-will" employees).
Under Massachusetts law:
In order to sustain [a] ... breach of contract claim, plaintiffs must plead: (1) that the parties had an agreement supported by valid consideration; (2) that plaintiffs were ready, willing and able to perform; (3) that defendant's breach has prevented them from performing; and (4) that plaintiffs were damaged. See Singarella v. City of Boston , 342 Mass. 385, 173 N.E.2d 290, 291 (1961) ; Petricca v. Simpson , 862 F.Supp. 13, 17 (D. Mass. 1994).
Doyle v. Hasbro, Inc. , 103 F.3d 186, 194 (1st Cir. 1996) (affirming dismissal of breach of contract claim). In Doyle :
The [...] complaint fails to state the nature of the alleged contract with any specificity. There is no presentation of the terms of a contract, its duration, or even when it was formed. Nor does the Amended Complaint explain what obligations were imposed on each of the parties by the alleged contract. It does not plead that plaintiffs were ready to perform under the contract or that the defendants' breach prevented them from performing, and it does not identify the damages attributable to the breach.
Id. The same is true here.
Plaintiff does not allege that she was employed pursuant to a contract with the MBTA or Michaud, other than an opaque reference to "the contract" in her complaint. (# 1 at 6 ("Defendants and the MBTA Breached [sic] the contract with Plaintiff when they failed to provide her an alternative job placement once it became known that she would not be able to continue to perform her duties as a motorperson, and permit her to stay as a ... CSA.") (citations omitted).) Plaintiff does not give any specifics as to the content of any employment contract or speak to her ability to perform. Young v. Brennan , No. CV 16-12001-FDS, 2017 WL 1843696, at *4 (D. Mass. May 8, 2017) ("It is not clear under what theory plaintiff brings the breach of contract claim, but, even construing the pro se complaint liberally, it fails to state a claim. The complaint does not contain any specific allegation that plaintiff had a contract with defendant."). For these reasons, plaintiff's breach of contract claim should be dismissed.
Plaintiff appears to focus on the wrongful discharge claim in her opposition to defendants' motion to dismiss. See # 29 at 12-14. This claim fares no better than her contract claim. In Massachusetts, a claim for wrongful discharge in violation of public policy, as a common law remedy, may only be sought where no statutory *175 scheme provides a remedy. Melley , 475 N.E.2d at 1229 ("[W]here, as here, there is a comprehensive remedial statute, the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme."). The First Circuit has applied Melley to hold that a state common law cause of action may be preempted by federal statute. See, e.g., Valerio v. Putnam Assocs. Inc. , 173 F.3d 35, 45-46 (1st Cir. 1999) (affirming grant of summary judgment for defendant on state law retaliation claim where FLSA provided a remedy).
Here, plaintiff's wrongful termination claim is duplicative of her claim for unlawful termination based on disability under the ADA, which provides plaintiff with a potential remedy. Plaintiff's wrongful termination claim should, therefore, be dismissed. See Perez v. Greater New Bedford Vocational Tech. Sch. Dist. , 988 F.Supp.2d 105, 113 (D. Mass. 2013) ;[5] see also Wong v. Resolve Tech. , No. CIV.A. 10-11642-DJC, 2011 WL 3157198 (D. Mass. July 25, 2011) (dismissing claim for termination of at-will employment in violation of public policy where the ADA provided a potential remedy for the complained-of conduct); Carter v. Tropicana Prod. Sales, Inc. , No. CIV A 07-10921-RWZ, 2008 WL 190791 (D. Mass. Jan. 4, 2008) (dismissing wrongful termination claim where precluded by the Surface Transportation Assistance Act).
2. Plaintiff States a Claim for Violation of the ADA.[6]
In her complaint and opposition to defendants' motion to dismiss, plaintiff cites both Title I and Title II of the ADA. Plaintiff states a claim against the MBTA under Title II.
a. Plaintiff Failed to Exhaust Administrative Remedies under Title I of the ADA.
In order to file a lawsuit for employment discrimination under Title I of the ADA, an individual must first exhaust his or her administrative remedies. Bonilla v. Muebles J.J. Alvarez, Inc. , 194 F.3d 275, 277 (1st Cir. 1999). The administrative claim must be filed within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1) ; Tuli v. Brigham & Women's Hosp. , 656 F.3d 33, 40 (1st Cir. 2011). Plaintiff does not assert in her complaint or her opposition to the MBTA defendants' motion to dismiss that she exhausted her administrative remedies. Defendants attach to their motion to dismiss an EEOC complaint plaintiff apparently filed on March 23, 2017. (# 10-1 Ex. A.)[7] The MBTA terminated plaintiff on September 29, 2014. (# 1 at 6 ¶ 14, Ex. Y.) Therefore, plaintiff's ability to file a timely administrative complaint ended in July 2015, 300 days from the termination. Plaintiff's March 2017 filing was almost two years late, and her Title I claim must be *176 dismissed. See Bonilla , 194 F.3d at 279 (affirming dismissal of ADA claim).
b. Plaintiff's Claims Under Title II of the ADA.
Plaintiff claims that the MBTA defendants violated Title II of the ADA by terminating her. (# 29 at 15 (citing 42 U.S.C. § 12132 ).) Title II states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Notably, plaintiffs need not exhaust their administrative remedies before filing suit under Title II." Downs v. Massachusetts Bay Transp. Auth. , 13 F.Supp.2d 130, 136 (D. Mass. 1998) (rejecting argument that Title II of the ADA does not apply to employment discrimination).
The MBTA defendants wrongly dismiss plaintiff's suggestion that Title II can encompass employment discrimination. In their reply brief they claim, "Ms. Logie argues that her termination violated Title II of the ADA. Title II concerns access to the MBTA's services, not freedom from discrimination in employment." (# 34 at 3.)[8] To the contrary, as the First Circuit itself has stated, whether Title II covers employment discrimination is "not so plain." Currie v. Group Ins. Com'n , 290 F.3d 1, 6 (1st Cir. 2002) (discussing statutory language and Department of Justice regulation that says Title II covers employment practices; declining to decide the issue). Rather, "[t]he question of whether challenges to employment practices are cognizable under Title II has been considered by two of our sister circuits, and by several trial courts within this circuit, with divergent results." Id. at 7 (citations omitted).
As one district court in this circuit well summarized:
[W]hether Title II encompasses employment practices-that is, whether public employees can sue public entities for employment discrimination-is not well-settled law. The Circuit Courts that have considered this question are split. See Brumfield v. City of Chicago , 735 F.3d 619, 627 (7th Cir. 2013) (no cognizable employment discrimination claim under Title II); Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma , 693 F.3d 1303, 1314 (10th Cir. 2012) (not cognizable); Zimmerman v. Or. Dep't of Justice , 170 F.3d 1169, 1173-74 (9th Cir.1999) (not cognizable), cert. denied , 531 U.S. 1189, 121 S.Ct. 1186, 149 L.Ed.2d 103 (2001) ; Bledsoe v. Palm Beach County Soil & Water Conservation Dist. , 133 F.3d 816, 820-22 (11th Cir. 1998) (cognizable). Additionally, the District Courts within our Circuit that have addressed this issue are also split in their interpretation of Title II. See Skinner v. Salem School Dist. , 718 F.Supp.2d 186, 188 (D.N.H. 2010) (cognizable); Downs v. Mass. Bay Transp. Auth. , 13 F.Supp.2d 130, 134-36 (D. Mass. 1998) (cognizable); Motzkin v. Trs. of Boston Univ. , 938 F.Supp. 983, 996 (D. Mass. 1996) (not cognizable).
Torres v. Junto De Gobierno De Servicio De Emergencia , 91 F.Supp.3d 243, 252-54 (D.P.R. 2015) (denying motion to dismiss employment discrimination claim under Title II of the ADA). Therefore, where the law is in flux, plaintiff's Title II ADA claim will not be dismissed on the grounds that Title II does not cover employment discrimination.
*177 To state a claim for employment discrimination under Title II, plaintiff must show "1) that [s]he was disabled, (2) that [s]he could perform the essential functions of h[er] job with or without reasonable accommodation, and (3) that [s]he was fired because of h[er] disability." Downs , 13 F.Supp.2d at 133. Defendants do not, apparently, contest that plaintiff was disabled. Plaintiff also sufficiently pleads that she was terminated due to her disability. See, e.g. , # 1 at 1, 6 ¶ 15. Under the second prong, then, plaintiff "must prove [...] that [s]he was a qualified individual with a disability, or, in the language of the Rehabilitation Act, that [s]he was 'otherwise qualified,' for the position of [train] driver." Downs , 13 F.Supp.2d at 139-40 (citing 42 U.S.C. § 12132 ; 29 U.S.C. § 794 ).[9]
Under Title I of the ADA, a person who is not able to perform his or her original position, as was apparently true of plaintiff, may nonetheless be entitled to accommodation in the form of reassignment to a vacant position for which the employee is qualified. See U.S. Airways, Inc. v. Barnett , 535 U.S. 391, 399, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002) ("[T]he ADA says that the term reasonable accommodation may include ... reassignment to a vacant position.") (quoting 42 U.S.C. § 1211(9)(B) ) (internal quotations omitted); Feliciano v. Rhode Island , 160 F.3d 780, 786 (1st Cir. 1998) (noting that the ADA may require employers to accommodate disabled employees by placing them in vacant positions they can perform, but that plaintiff had not shown such position existed); Andrews v. Massachusetts Bay Transit Authority , 872 F.Supp.2d 108 (D. Mass. 2012) (denying motion to dismiss ADA claim where plaintiff claimed that she should have been assigned to a CSA position when injury prevented her from acting as a streetcar motorperson). While there is no binding law applying this provision to employment discrimination claims under Title II in this circuit, assignment to alternative positions may well be required as a "reasonable accommodation" under Title II. See, e.g., Gilbert v. City of St. Charles , No. 96 C 7101, 1999 WL 182151 (N.D. Ill. Mar. 24, 1999). In this case, plaintiff has pled sufficiently that she was qualified for a CSA position, see, e.g. , # 1 at 3-4 ¶ 6 (noting she was "returned" to the CSA department and that the appointment was extended) ), and has suggested that such a position existed, see, e.g. , # 1 Exs. I, F (reflecting multiple extensions of the CSA position). Therefore, plaintiff has stated a claim under Title II of the ADA against the MBTA.[10]
The question remains whether plaintiff has also stated a claim against Michaud, in his individual and/or official capacity. "[A] claim may not be brought under the Title II of the ADA against an individual in his or her individual capacity." Wiesman v. Hill , 629 F.Supp.2d 106, 112 (D. Mass. 2009). Suit may be allowed against Michaud in his official capacity. See Torres , 91 F.Supp.3d at 255 (allowing Title II ADA claim to proceed against person in his official capacity). However, plaintiff fails to allege sufficient facts regarding Michaud's involvement in any alleged discrimination. Plaintiff claims that Michaud was Superintendent of the MBTA Red Line (# 1 at 2 ¶ 4) and that he sent her two letters requesting plaintiff keep the MBTA apprised of her condition and stating *178 that she could be suspended or terminated if she did not attend scheduled interviews, id. at 4 ¶¶7, 9, Exs. G, M. Plaintiff does not allege that Michaud was involved in the decision to terminate her or to deny her request to remain a CSA, let alone that he did these things because of plaintiff's disability. Thus plaintiff has failed to state any claim against Michaud.
3. Plaintiff Fails to State a Claim for Violation of the FMLA.
Plaintiff also fails to state a claim for violation of the FMLA. In this case, there is no dispute that plaintiff was granted extended medical leave in excess of that required by the FMLA. See, e.g. , # 1 Ex. U (reflecting an eleven-month absence). There is also no dispute that plaintiff was unable to perform the job for which she was hired after her FMLA leave expired, as her diabetes prevented her from safely driving a train. Neither the MBTA nor Michaud were required to reinstate plaintiff under the FMLA. Bellone v. Southwick-Tolland Reg'l Sch. Dist. , 748 F.3d 418, 424 (1st Cir. 2014) ("We have held that an employee is not entitled to reinstatement under the FMLA if he is unable to return to work until after the expiration of his leave.") (citation omitted) (affirming grant of summary judgment where teacher was unable to return to his job after his leave period ended).
Recognizing her inability to perform the job for which she was hired, plaintiff claims that the MBTA defendants violated the FMLA by failing to offer her an alternate position, namely as a CSA. See # 29 at 13 (citing various laws, including the FMLA, for the proposition that plaintiff should have been given "a permamnent [sic] alternative position"). Under the FMLA:
If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA.
29 C.F.R. § 825.216. The FMLA did not require the MBTA to offer plaintiff a CSA position. Id. ; Tardie v. Rehab. Hosp. of Rhode Island , 168 F.3d 538, 544 (1st Cir. 1999) (affirming summary judgment where employer was not required to reinstate or offer a requested accommodation to employee under the FMLA where she could not perform an essential function of her job). Plaintiff has failed to state a claim against the MBTA defendants under the MBTA.
4. Plaintiff Fails to State a Claim for Violation of Section 1983.
Plaintiff claims that the MBTA defendants violated 42 U.S.C. § 1983 by failing to permit plaintiff to continue to work as a CSA. (# 1 at 6-7.) The alleged violation is based on the same facts as plaintiff's ADA and FMLA claims. Id. Section 1983"is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights...." Gagliardi , 513 F.3d at 306. However, "generally speaking, a claim under § 1983 may not be asserted based upon the violation of a statute that itself already provides 'a comprehensive enforcement mechanism for protection of a federal right.' " Meara v. Bennett , 27 F.Supp.2d 288, 291-92 (D. Mass. 1998) (quoting Smith v. Robinson , 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) ) (dismissing claim for violation of Section 1983 based on violation of the ADA).
The First Circuit has made clear that a plaintiff may not enforce the ADA via a Section 1983 claim. M.M.R.-Z. ex rel. Ramirez-Senda v. Puerto Rico , 528 F.3d 9, 13 n.3 (1st Cir. 2008) (" Section 1983 cannot be used as a vehicle for ADA or other statutory *179 claims that provide their own frameworks for damages.") (citation omitted); see also Desrochers v. Hilton Hotels Corp. , 28 F.Supp.2d 693, 695 (D. Mass. 1998) ("This Court accepts the cogent reasoning of the courts that have barred the Section 1983 claims: the comprehensive detailed enforcement provisions of the FMLA show Congress' intention that the specific remedies set forth in Section 2617 of the FMLA are the exclusive remedies for the violation of the FMLA.") (citation omitted). While the First Circuit has not specifically decided whether a plaintiff may enforce the FMLA through Section 1983, plaintiff here has not stated a claim for violation of the FMLA, as explained above. See Fantini v. Salem State Coll. , 557 F.3d 22, 35 (1st Cir. 2009) (declining to decide whether the "FMLA may be enforced through Section 1983" where "[i]ndependent of whether an FMLA violation could be enforced through § 1983, no FMLA violation elaborated has been properly alleged in this case"). For these reasons, plaintiff's Section 1983 claim against the MBTA defendants should be dismissed.
V. Recommendation.
For the above reasons, the court RECOMMENDS that the MBTA defendants' motion to dismiss be GRANTED in part and DENIED in part. All claims against defendants Andrews and Michaud in their official and individual capacities should be dismissed. All claims against the MBTA, except for plaintiff's claim for violation of Title II of the ADA should be dismissed.
VI. Review by District Court Judge.
The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. See Keating v. Secretary of Health & Human Servs. , 848 F.2d 271 (1st Cir. 1988) ; United States v. Emiliano Valencia-Copete , 792 F.2d 4 (1st Cir. 1986) ; Scott v. Schweiker , 702 F.2d 13, 14 (1st Cir. 1983) ; United States v. Vega , 678 F.2d 376, 378-379 (1st Cir. 1982) ; Park Motor Mart, Inc. v. Ford Motor Co. , 616 F.2d 603 (1st Cir. 1980) ; see also Thomas v. Arn , 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

The facts are taken primarily from plaintiff's complaint and the attached exhibits, and are considered true for purposes of this motion. Doyle v. Hasbro, Inc. , 103 F.3d 186 (1996) ("We accept as true 'all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor.' ") (quoting Aulson v. Blanchard , 83 F.3d 1, 3 (1st Cir. 1996) ). "We may augment the facts in the complaint by reference to '(i) documents annexed to [the complaint] or fairly incorporated into it, and (ii) matters susceptible to judicial notice.' " Gagliardi v. Sullivan , 513 F.3d 301, 306 (1st Cir. 2008) (citing Nisselson v. Lernout , 469 F.3d 143, 150 (1st Cir. 2006) (footnote omitted).

Plaintiff's complaint contains inconsistently numbered and unnumbered paragraphs. Therefore both page and paragraph number references will be used.

Plaintiff has apparently relied on a "jailhouse lawyer, Tony Gaskins" for assistance. (# 29 at 6.)

Defendants make a confounding claim that this court does not have jurisdiction over the contract and wrongful discharge claims because they are state law claims. (# 10 at 9.) However, where plaintiff brings claims under federal law, like the FMLA, ADA, and § 1983 claims here, the court has supplemental jurisdiction over the state claims. 28 U.S.C.A. § 1367. Even if the court were to dismiss all of the federal claims, which it does not, it could, in its discretion, continue to exercise jurisdiction over these claims. As the First Circuit noted recently:
After all, it is common ground that when a federal court may validly exercise federal-question jurisdiction over at least one claim, it may also exercise supplemental jurisdiction over pendent state-law claims. See Cavallaro [v. UMass Memorial Healthcare, Inc. ], 678 F.3d [1,] 5, 9 [ (1st Cir. 2012) ] ; BIW [Deceived v. Local S6, Indus. Union of Marine and Shipbuilding Workers of America, IAMAW District Lodge 4 ], 132 F.3d [824,] 833 [ (1st Cir. 1997) ]. And once such supplemental jurisdiction has attached, the mere fact that the anchoring federal claim subsequently goes up in smoke does not, without more, doom all pendent state-law claims. See Rodriguez v. Doral Mortg. Corp. , 57 F.3d 1168, 1177 (1st Cir. 1995) ; see also 28 U.S.C. § 1367(a), (c).
Lawless v. Steward Health Care Sys., LLC , 894 F.3d 9, 20 (1st Cir. 2018).

As the Perez court stated:
Plaintiff's claim for wrongful termination based on violation of public policy is duplicative of her other claims of retaliation based on protected conduct under federal law and her Massachusetts whistleblower statute claim. Those laws create complex remedial schemes intended to enforce the public policies they embody. Because creation of a common-law cause of action would interfere with those schemes, the Court will not now create one.
Id.

As a pro se litigant, plaintiff's failure to state a separate cause of action under the ADA within the complaint is not dispositive. Plaintiff referred to the ADA in both her complaint and her opposition to the MBTA defendants' motion to dismiss. See # 1 at 3 ¶ 3, 5 ¶ 11, 6 ¶ 15, 7; # 29 at 8-9, 12, 14-15.

Plaintiff has not challenged the authenticity of this document or denied a failure to exhaust administrative remedies.

Defendants cite only Parker v. Universidad de Puerto Rico , 225 F.3d 1, 4 (1st Cir. 2000). This case does not address whether employment discrimination claims may be brought under Title II of the ADA; it does not address employment discrimination at all.

Plaintiff also cites the Rehabilitation Act in her opposition to defendants' motions to dismiss, apparently drawing parallels between the standards of the Act and Title II of the ADA. See, e.g. , # 29 at 8. There is no Rehabilitation Act claim in plaintiff's complaint.

Plaintiff requests both compensatory and punitive damages. (# 1 at 7-8.) Title II of the ADA does not provide for recovery of punitive damages. Torres , 91 F.Supp.3d at 254 ("[P]unitive damages are clearly not available for a Title II claim.").