**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-2207
_____

INTERNATIONAL SECURITY, LLC

v.

DANA M. BERRY; S. BENJAMIN PARSONS,
Appellants
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:20-cv-01514)
District Judge: Honorable Maryellen Noreika
_____

Argued October 21, 2025
_____

Before: HARDIMAN, KRAUSE, and FREEMAN, *Circuit Judges*

(Filed: November 7, 2025)


Nicholas D. Picollelli, Jr.    **[ARGUED]**
Zachary S. Stirparo
Office of the Attorney General of Delaware
Delaware Department of Justice
820 N French Street
Carvel Office Building
Wilmington, DE 19801

    *Counsel for Appellants*

James S. Green, Jr.          **[ARGUED]**
Seitz, Van Ogtrop & Green
222 Delaware Avenue
Suite 1500, P.O. Box 68
Wilmington, DE 19801

　　　*Counsel for Appellee*

_____

OPINION*

_____


KRAUSE, *Circuit Judge*.

Appellants Dana M. Berry and S. Benjamin Parsons appeal the District Court's implicit denial of qualified immunity for their roles in temporarily suspending the license of Appellee International Security, LLC without offering a pre-deprivation hearing in response to its violations of state law. When this case was previously before us at the motion-to-dismiss stage, we concluded that qualified immunity was not appropriate and vacated the District Court's order dismissing the claims against Berry and Parsons. *See Int'l Sec., LLC v. Berry* (*Berry I*), No. 21-2347, 2023 WL 3116433 (3d Cir. Apr. 27, 2023). But now, based on the undisputed facts developed through discovery, we can define the right at issue with more specificity and hold that this right was not clearly established when Berry and Parsons acted. We will therefore reverse.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I.    DISCUSSION[1]

The qualified immunity doctrine shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To resolve whether Berry and Parsons are entitled to qualified immunity at the summary judgment stage, we ask: (1) "whether the facts—taken in the light most favorable to the nonmoving party— show that a government official violated a constitutional right," and (2) "whether that right was clearly established at the time of the official's actions." *Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015). We may address this two-prong inquiry in the order we deem most appropriate. *Id.* at 418.

Here, we begin and end at the second prong. For a right to be "clearly established," the law must be "sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S.

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a). We have jurisdiction to review the implicit denial of qualified immunity under the collateral order doctrine. *See Oliver v. Roquet*, 858 F.3d 180, 188 (3d Cir. 2017) (treating the reservation of the question of qualified immunity as a denial sufficient to confer appellate jurisdiction). Specifically, "we possess jurisdiction to review whether the set of facts identified by the district court is sufficient to establish a violation of a clearly established constitutional right," but "we lack jurisdiction to consider whether the district court correctly identified the set of facts that the summary judgment record is sufficient to prove." *Ziccardi v. City of Philadelphia*, 288 F.3d 57, 61 (3d Cir. 2002); *see also Williams v. City of York*, 967 F.3d 252, 257 (3d Cir. 2020) (reviewing the record, when faced with a summary order, "to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed" (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995))). Our standard of review is plenary. *Eddy v. V.I. Water & Power Auth.*, 256 F.3d 204, 208 (3d Cir. 2001).

48, 63 (2018) (citation modified).  Typically, that means there is "analogous precedent from the Supreme Court or a consensus of persuasive authority in the Courts of Appeals" giving the official "fair warning" that his conduct violates that right.  *Stringer v. County of Bucks*, 141 F.4th 76, 85 (3d Cir. 2025) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  Because the doctrine of qualified immunity shields a government official who acted reasonably in the particular circumstances he faced, it is essential for us to frame the right "in light of the specific context of the case," *Mack v. Yost*, 63 F.4th 211, 228 (3d Cir. 2023) (citation modified), which demands a "high degree of specificity," *Wesby*, 583 U.S. at 63 (citation modified).

In *Berry I*, we relied on the allegations in the Complaint (as we are required to do at the motion-to-dismiss stage) to frame the right at issue and concluded that the right—defined in that context—was clearly established.  As we have cautioned, however, "whether the right allegedly violated was 'clearly established' [] presents unique difficulties at the pleading stage," because "it is often the case that, without more than the complaint to go on, a court cannot fairly tell . . . the precise contours of the official's conduct and the context in which it occurred."  *Stringer*, 141 F.4th at 85-86 (citation modified).  That is why "the fact-intensive nature of qualified immunity makes it often a bad fit" for the motion-to-dismiss stage, *id.* at 87 (citation omitted), and why a different result may be warranted with the benefit of discovery at summary judgment.

Such is the case here.  As it turns out, two of the allegations central to our framing of the right at the motion-to-dismiss stage were contradicted by the evidence adduced in discovery—specifically, that (1) the suspension of International Security's license was

issued *solely* because of a former employee's over-the-phone tip, and (2) that Berry's investigation did not occur until *after* the suspension was issued. *See Berry I*, 2023 WL 3116433, at *1, *3; JA829-30.

Discovery revealed that, on March 5, 2020, Berry, a supervisor in the Professional Licensing Section of the Delaware State Police (PLS), was contacted by a former employee of International Security who stated that his former employer was using unlicensed guards and failing to report all client locations, in violation of multiple state laws. After receiving that call, Berry first reviewed International Security's PLS file and discovered that it had a history of such violations and was caught using unlicensed guards in 2013, 2016, and 2018. Berry had assumed her role in the PLS in 2018, and she was unaware of International Security's history of using of unlicensed guards until prompted by the March 5 phone call to review the file. After learning of International Security's history, Berry called Alfred Izquierdo, International Security's president and sole executive, to ask whether International Security was indeed employing unlicensed security guards. The call did not yield a definitive answer and, instead, ended with Izquierdo telling Berry to put her questions in writing so that he could consult an attorney.

That same day, Berry and another officer further investigated the allegation by visiting a location where International Security employed guards. At about 3:00 p.m., Berry arrived at Social Finance, Inc. (SoFi) in Claymont, Delaware, where she determined that both the uniformed guard on duty and the guard slated to replace him were not licensed and had not been identified to the PLS on the personnel roster that

5

International Security was required to file. Having validated International Security's use of unlicensed and unreported guards at SoFi in violation of state law, Berry recommended to Parsons (the Director of the PLS) that he issue an emergency suspension of International Security's license.[2]

Parsons approved an emergency suspension letter that was sent to Izquierdo, which instructed International Security to "cease and desist all services in the State of Delaware until such time that [its] license may be re-instated" and advised Izquierdo of International Security's "right to a hearing" before the Delaware Board of Examiners of Private Investigators and Private Security Agencies (the Board) "if [he made] a timely request." JA625; *see* 24 Del. C. § 1308(a) (authorizing the Director of the PLS to issue an emergency suspension without a pre-deprivation hearing when a situation requires "immediate action to protect the health and safety of the public").[3]

In view of these undisputed facts entered into the record since the prior appeal, we can now define the right with greater specificity. *See Mack*, 63 F.4th at 228, 231. In this context, the question is whether it would be clear to every reasonable officer that it violated due process to temporarily suspend a private security agency's business license,

---

[2] After recommending to Parsons that International Security's license be suspended and departing SoFi, Berry continued the investigation that day and visited Luther Towers, an apartment complex in Wilmington, Delaware. Notwithstanding International Security's failure to report this location to the PLS, Berry confirmed that there was an unlicensed International Security guard on duty who was ineligible for licensure because of his criminal record.

[3] A week after Parsons issued the emergency suspension, International Security requested a hearing before the Board under 24 Del. C. § 1308(a), but the parties settled the matter before the hearing was set. International Security contends that it lost contracts with some of its clients as a result of the suspension.

pending a post-deprivation hearing, after the officer obtained proof that the agency violated multiple licensing and reporting requirements related to public safety.

International Security argues that its right to a pre-deprivation hearing under these circumstances was clearly established in *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412 (3d Cir. 2008), a case on which we relied in *Berry I*. But when we decided *Berry I*, we necessarily described the right at issue at a high-level of generality based only on the allegations in the Complaint;[4] having now defined the right at the requisite higher-level of specificity, we cannot say that *Elsmere* gave Berry and Parsons "fair warning" that their conduct was unlawful. *Stringer*, 141 F.4th at 85 (quoting *Hope*, 536 U.S. at 741).

In *Elsmere*, we *upheld* the emergency action of local government officials who—without offering a pre-deprivation hearing—condemned an apartment complex and ordered that the property owner vacate residents because of the presence of "mold, water leaks, and raw sewage, amounting to various violations" of the municipal code and "pos[ing] a substantial and immediate threat to the health and welfare" of the residents. 542 F.3d at 415, 419. We were "reluctant to second guess the decision to act on an

---

[4] In reserving the question of qualified immunity, the District Court understandably adhered to our articulation of the clearly established right based on the allegations in the Complaint at the motion-to-dismiss stage in *Berry I* and the import of *Elsmere*. As explained, however, the undisputed facts in the record now allow us to define the right based on the specific context facing Berry and Parsons when they acted. *See Mack v. Yost*, 63 F.4th 211, 228, 231 (3d Cir. 2023); *District of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018).

7

urgent basis" in a situation that "could have serious health consequences" for the public. *Id.* at 420.

Instead, we adopted a rule recognizing an appropriate level of deference owed to state officials facing such situations: Where there is "competent evidence allowing the official to reasonably believe that an emergency does in fact exist . . . [,] the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Id.* at 418 (alteration in original) (quotation omitted). As a result, we held that the officials acted reasonably (even if not perfectly) under the circumstances and the post-deprivation process available to the property owner under the municipal code "was all that was required" under the Due Process Clause. *Id.* at 414; *see id.* at 420 (cautioning that "perfection or near perfection is not the standard").

International Security asks us to read *Elsmere* as clearly establishing that "officers cannot use their discretionary authority to arbitrarily invoke an emergency to suspend a license without requisite due process." Answering Br. 28. We reject that framing for a few reasons: To start, International Security's articulation of the right is at much too "high [a] level of generality," *Wesby*, 583 U.S. at 63, and is unhelpfully "abstract" for Berry and Parsons to have known of the unlawfulness of their conduct when they acted, *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). What is more, it conflates the *sufficiency* of the facts of *Elsmere* with those that are *necessary* to satisfy due process in an emergency. And even assuming International Security's framing, it does not seem obvious or settled that a reasonable officer who has temporarily suspended a private

8

security agency's business license in response to the circumstances faced by Berry and Parsons here has acted arbitrarily or abused his discretion.

Other than *Elsmere*, International Security has not pointed to (and we have not found) other cases—let alone a "robust consensus," *Mack*, 63 F.4th at 233—any closer to the undisputed facts and circumstances confronting Berry and Parsons on March 5, 2020.

Because the constitutional right Berry and Parsons are alleged to have violated was not clearly established when they acted, they are entitled to qualified immunity.

## II.    CONCLUSION

For the foregoing reasons, we will reverse the District Court's order reserving judgment on the question of qualified immunity as to International Security's procedural due process claim.